Next case is number 14-1963-1964 and 2074 of the United States v. David Gorski. Good morning, Mr. Weinberg. Martin Weinberg on behalf of Legion Corporation. This appeal arises from a district court order to the client's law firm to produce literally thousands of pages of documents that related to the law firm's providing of legal services to the client. Who is Ms. Levin's client here? Is it just Legion or is it Legion and Gorski? Legion and Gorski. Are both jointly represented by Ms. Levin or they were? Yes, Gorski in his corporate capacity and Ms. Minor represents Mr. Gorski and perhaps can focus in on that distinction. I don't know what you mean when you say in his corporate capacity. Was he, clearly Legion was a client of? Legion was a client, I represent Legion. Was Mr. Gorski a client of? Yes, we would contend he was a client of the Mintz law firm. That this appeal is limited to that part of Judge Saylor's September 12th order and then his order staying that order that's limited to the law firm turnover order. The part of the order that dealt with the separate subpoena to Legion Corporation for its records was held in abeyance by the district court pending this court's resolution of the legal issues connected to his September 12th order. Are the pool of documents held by Mintz Levin identical to the pool of documents that your client has possession of? There's an overlap. There's an overlap, so there's some documents that Mintz may have that your client does not retain? Yes, there would be documents, the Mintz opinion work product, the Mintz drafts, its legal research, its intralaw firm emails. The government has conceded Pearlman jurisdiction as to that set of documents that are only possessed by Mintz. The government challenge to jurisdiction is to the documents that would be in the possession of both Legion and Mintz. Their challenge came for the first time before this court in its briefing. But you agree with the government that under Pearlstein there is jurisdiction for this interlocutory appeal? Oh, this is within the heartland of the 1918 Pearlman decision. Your Honor, in the Gill v. Gulfstream Park, Judge Sellier and FDIC, the Ogden, a variety of great grand jury cases, this court has not required a law firm to either go in contempt or turn over documents. Legion is powerless to ask Mintz to do that. Mintz has declined to do it, and the Mintz document appeal is squarely before this court. So what about the documents in Legion's possession? Well, the documents in Legion's possession are held in abeyance, the turnover order, and are simply not before this court because Legion did not go into contempt. Judge Sellier agreed with the sequencing of having the Mintz document turnover ruled on first, and he stayed the Legion corporate turnover. So if I can turn my attention to the legal issue and whether or not Judge Sellier's analysis constituted a legal error for overbreadth. The judge in his September 12th... Legal error as opposed to abuse of discretion? Yes, we would contend that his decision that Gorski intended the crime fraud to continue through the misuse of the law firm would be under the more deferential appellate standard, but his declining to do a document-by-document review, or at least his subjecting that review to what he said was subject matter waiver in his September 12th... I understood the court to have said that it did do a document-by-document review, and there might be a separate question as to your argument that the court had some obligation to winnow through the documents and pull out the ones that are the best exemplar of fraud and turn those over, but make a document-by-document determination and not turn over routine things. Yes, I'm not contesting that Judge Sellier didn't look at the documents. What I'm contending is that his legal analysis as to how to implement the crime fraud test was an error, that there were no particular... What is the error? The error is that there are many documents that we would contend cannot fall within a crime fraud exception. The documents are before this court in our ex parte appendices. They've been briefed in the ex parte portions of the pleadings. They've been proffered in the ex parte proffers that are part of the record. But when you look at the documents, the mince documents, there's legal research. There's opinion work product. There are drafts. Help me on this. Let's assume someone has a plan to commit fraud, and to do it they need a corporation set up in a certain way or else they can't pull off the fraud. So they go to the lawyers and they tell the lawyers, I want you to set up this corporation for me. And it's factually supported that the reason the guy's setting up the corporation, whether or not known to the law firm, is so he can pull off the fraud. Then doesn't the crime fraud exception apply fully there to everything the law firm did to set up the corporation since the whole purpose of him going to the corporation, of going to the law firm, was to get a corporation form to pull off the fraud? We would contest that's the start of the analysis. Then how does it deviate going forward from that? Because that would be a relevance test. In other words, yes, all the documents might be ruled to be relevant to the client intent, but not every document was in furtherance of or intended to be in furtherance. I couldn't pull off the fraud unless I had the corporation. And the only thing the law firm is doing is setting up the corporation. Why don't I have a complete congruence between everything the law firm did and the purpose that triggers the exception? Because certain of the documents used by the law firm, for instance, researching the applicability of the federal program, responding to the legal problem. It was all part of setting up the corporation, which was in furtherance unbeknownst to the law firm, perhaps, or none. It doesn't matter. But it was all part of what I needed to pull off the fraud. Because the test for when the precious privilege gets extinguished is more focused and it needs to look at a particular document, a particular communication, and ask, was it the client's intention that that document further a crime fraud? Well, where do you get that out of the rule? That's where you're... The best, you know, formula is Judge Winter's formula in Inouye Richard Roe, 68 Fed 3rd, where he talks about a double test. First, does the client intend the communication or document to be in furtherance of the ongoing crime fraud? And second, was the document in furtherance, was the document itself in furtherance of crime fraud? This is a single purpose here. So that what I'm struggling with is getting out of my mind the belief that anything that Mintz Levin did was in furtherance of the fraud, assuming, of course, that the government can prove the fraud. I mean, this isn't... Your argument would make a great deal of sense if you had a law firm that was representing a client in several different matters and might be doing work unrelated to the fraudulent scheme, but there's no reason to believe that I've seen on this record that Mintz Levin was doing anything but work on what Gorski perceived to be or requested them to do in furtherance of the fraudulent scheme, and isn't the jury going to be entitled to a complete picture of what Mintz Levin did, not just a selective picture? Well, I think the precondition for the jury receiving the evidence, and again, that's the relevance test that has been repeatedly rejected circuit after circuit, is whether the privilege would trump the crime fraud. Here, there was multiple purposes or multiple parts of Mintz Levin's representation. The client went to them at the recommendation of a prior lawyer who was asked by the client to select a national firm, a firm with experience in federal regulations. He went to a disinterested new law firm, and he presented to them accurately the tension, which is that he was a minority owner, the new problem was enhancing the requirements for the veteran's control of the company, and he was asking Mintz Levin to keep him within the perimeters of federal law, and Mintz Levin has these internal emails identifying properly the issue, which is how do we maximize the non-veteran's 49 percent interest without running afoul of the regulations. Excuse me, go back to Judge Salyer's question. The test here is whether the communication was with the intent to facilitate the fraudulent activity, and I'm stuck on the same thing here in terms of if the setting up of the corporation was the necessary step to facilitate this fraud, then why isn't every communication having anything to do with the setting up of the corporation within the exception? It's a single purpose that the retained law firm, and I agree with you completely if Mintz Levin had done something else for him, like done a deed for his house that was unrelated to this, that wouldn't fall on him. Well, we have said the reformulation of the corporation, the redrafting of corporate documents. In fact, doesn't Mintz Levin represent him in two related matters? The other has to do with the protest. Yes, Your Honor. Okay, is that the universe of Mintz Levin's representation? Well, there's actually about 11 months of records that are being subpoenaed. Some deal with the February and March, the November to March formation of the company. Then they deal with a bid protest and the filing of a bid protest, but the subpoenas went out six months after both of those subjects were largely finalized, and part of our overbred document is that Judge Saylor talked about collective judgments, subsets of documents did not make findings that should provide a review in court with a comfort that he didn't use what he said he used, which is a subject matter waiver test that has never been applied to crime fraud that deals with a client's voluntary disclosure of acts. It's quite antithetical to a kind of involuntary crime fraud analysis. Okay, thank you. Good morning, Your Honors. Tracy Miner on behalf of Mr. Gorski, and if I could reserve two minutes to rebut Ms. Yes, you may have it. Thank you, Your Honor. Going back to the corporation question, Your Honor, if the sole purpose of setting up the corporation is to commit a fraud, then I think there's an argument that everything comes within the crime fraud, except if there's tangential issues, like the corporation has to comply with tax laws, and so the person says, well, how do I set up a payroll system to comply with the tax, that withholding. I don't think that goes into what the crime fraud is. Here, though, it's a different situation, respectfully. Here you have a client coming to a law firm before there's a regulatory change, saying I anticipate a regulatory change. I want to comply with that regulatory change. I want a national expert to figure out what I have to do. You know, you didn't start with whether we have any jurisdiction to hear you at all. Fair enough, Your Honor. I doubt that we have jurisdiction. Let me address that then. Nonetheless, we're interested in hearing your merits-based arguments, but could you get more directly to what you think any error was by the trial judge? Yes, Your Honor. I think it's conceded I have jurisdiction at least over the Category 3 documents that are the subject of the government's appeal. I didn't read that in the government's brief. Okay. With respect to what I think the court's error was, is that the court did a relevance test instead of an in furtherance of test. You have somebody coming before regulations are in effect saying I want to be in compliance. I want to change the corporate structure. The regulations change on February 8th, and the corporate structure is not completed. I don't see any way that to say I want to comply put up a corporate structure for me so I comply with regulations. It shows any intent to commit a fraud or a crime. Okay, the regulations come into effect, and it's clear from the district court's order that the linchpin of this case, the linchpin of the fraud, it's in the indictment, is whether or not after the regulations become into effect, whether or not, then there are documents that are created as of a certain date, whether that's problematic or not, and whether affidavits are submitted to the SBA in April. The judge specifically says that the submission of the affidavits was the culmination of the fraud. So the fraud is over at the time those documents, if there was a fraud, and of course we contend there's nothing wrong with having effective dates of documents and there's nothing wrong with having an affidavit that says something happened on an effective date. But it doesn't say that. It doesn't say effective date. No, it doesn't. It says on. It says on a date. It says on the date. Isn't that just pure fraud right there? No, Your Honor, because the documents were also submitted that said effective as of. So it was clear that the people were referring. Did they have the word effective? It did. The contracts had the word effective. The affidavits did not, but the contracts were also available to the SBA. So we would contend that it was transparent. Didn't he need two things? As I understand the government's theory, he needed two things, or in fact under the regs he needed two things. He needed a corporation that satisfied certain ownership requirements under the regulations. Correct. But he also had to independently satisfy control operations. He needed to show, he needed to in fact be in day-to-day and long-term operational control of the corporation, or else the corporation didn't qualify. Correct, Your Honor. As I understand the government's theory, he wasn't. He was in control, not the disabled veterans. And there's the fraud. I understand, but this is a regulatory creature, Your Honor. If the definition of control is set forth in the regulations, there's the ownership test, there's the whether he can be terminated. That was a huge issue in the employment agreement. Can a veteran terminate him? My client didn't want to be able to be terminated. Guess what? Ms. Levin said, in order for the non-veteran to be in control, excuse me, the veteran to be in control, he has to be able to fire you. It's similar to a safe harbor. If you fit the safe harbor, you're good. Here, Ms. Levin said, okay, here's what the regulations require. You fit into it. He does it whether he likes it or not. And I think if you see the documents, you can see that he doesn't like a lot of Ms. Levin's advice, although he follows it. He, in fact, goes to a second lawyer to get an opinion because he thinks Ms. Levin is too conservative. Aren't you arguing now what may be a very good argument, that you can hardly have a fraudulent intent if you go to two reputable law firms and ask them advice on how to do something. But don't we need to assume that if there's a prima facie case of a reasonable basis for at least the government to maintain this fraud, then we turn to the fraud exception and it doesn't require us to find that your client did engage in fraud. I understand that, Your Honor. And I'm saying there may be a reasonable basis for the period of February 8th when the regulations change until the submission of the affidavit. But what Judge Saylor did is he included documents, for example, in December of 2010. Even the indictment only goes to November of 2010. I'm sorry. Did I hear you correctly that you're not contesting the February 8th until the submission of the documents? We've raised that. Yes or no? We're not contesting those, Your Honor. All right. Thank you. Thank you. Ms. Mazzano. Yeah. First, does the government concede that Mr. Gorski's appeal is one we have jurisdiction over? No, Your Honor, not Mr. Gorski's appeal. In fact, we've argued in our briefs and we argue now that Mr. Gorski's appeal is false. You do concede that the corporation has, to a limited extent, a proper interlocutory appeal before us? We concede it, but that is a factual question based on the documents. I think essentially what Legion is attempting to do here is an end run around the Perlman Doctrine. We need to take a step back. The government issued identical subpoenas to both Legion and Ms. Levin. They both withheld information, and the district court ordered it disclosed, saying it was covered by the crime-fraud exception. Now, in the district court, Legion's counsel represented there was a substantial overlap between these two sets of documents. However, Legion chose not to go into contempt and then appeal anyway. Yes, but Judge Saylor may have taken care of all of this by sort of ordering his decision on things, reserving the decision on the subpoena directly to Legion until this case is resolved, on the theory that this case will, in fact, resolve every argument that could be raised in that case. Well, I don't, with all due respect, Your Honor, I don't think that is what Judge Saylor did. I don't think if it's what he thought he was doing that that would be correct. But he did state proceedings on the subpoena directly to Legion, didn't he? He did, but I don't think he was focusing. Whatever he was focusing on, the fact of the matter is, doesn't that obviate the problem that you feel with Legion's appeal? Not at all, Your Honor, because as the Third Circuit held in the case of referring to the ABC Corporation, even if documents are technically within the physical possession of a law firm, the Perlman Doctrine does not apply where the party that could go into contempt here, Legion, they're really their documents. All they need to do, as the Third Circuit said in that case, was ask for the documents back. Wait, let me get that straight because this surprises me. Mintz-Levin gets a subpoena from the United States government ordering it to turn over certain documents, and you're saying the next day Mintz-Levin could turn around and take all those documents and all copies of them and give them to Legion and then say, ha-ha, we've got nothing to turn over to you? I'd be very surprised the U.S. government would be pleased to find that happened. I think that's not exactly what I'm saying. Well, then, once they got the subpoena, didn't they have only two choices, turn them over or move to Quash? Weren't those the only choices Mintz-Levin had? No, I think that's – no, I think that's – What was their third choice? One, a defense to a subpoena is the lack of legal control. And if the documents – we don't know because – government doesn't know because we haven't seen the documents. If the documents were legally – belonged, in fact, to Legion, Mintz-Levin, that was the perfect defense to a subpoena. But Mintz-Levin would have to assert that defense, presumably by a motion to Quash. And Legion can't control how Mintz-Levin chooses to respond to the subpoena. It can't, but it would be a defense. And here, where the documents, the universe of documents is substantially the same, what Legion is doing is essentially refusing to go into contempt, which is the normal method for – Put Legion to one side. Like, suppose we rejected this appeal on this argument that you're making, and said no jurisdiction for interlocutory review. Then what's Mintz-Levin going to do? They are going to turn over the documents, rather than go into contempt, because it's not their dog in this hunt. And then they'll never have an ability to appeal that, nor will Legion ever have an ability to appeal that, if the case with Gorski should settle, or whatever. So, isn't that the whole purpose of the Perlman Doctrine, is when a third party's lawyer has copies of documents that are subject to a subpoena, that's why we have the Perlman exception? And anyway, all you would be doing is delaying matters further. Right? You want Legion then to go into contempt, and then you'll make all the same arguments that you would make on the merits here. And this criminal proceeding has been stayed, I assume, for close to a year now, to give us the opportunity to resolve these questions. So, I think you're about to tell us nothing more about jurisdiction than is already in your briefs. So, can we get to the merits, including your cross-appeal, and then I would like to hear from your opponents on your cross-appeal as well, in their reserved time. Yes, Your Honor. Let me address the merits as to Legion and Gorski's appeal, and then as to the government's appeal. In respect to both appeals, because the same legal standard applies, the crucial element of the crime-fraud exception is that the communications were intended by the client to facilitate or conceal a fraud. Now, here the government is alleging, the indictment alleges, a fraud that extended way back to 2005. It encompassed a number of submissions of bids for government contracts then, a prior reorganization in 2007, various corporate changes. In other words, it was prior, long prior to these change in regulations. It also encompassed change in regulations, the bid protest, but it's an ongoing conspiracy. And the intent to facilitate or conceal includes the intent to reorganize, to conceal the earlier fraud as well. The focus on specific dates or whether or not these were intended for the bid protest is legally irrelevant under that standard. When you say they're legally, is the difference between the February 1 date that's put forward in the affidavit and the March date when things were actually done, is that material? Was that material to what was going on at the time? Well, yes. It's an element of the fraud. What difference did it make? What was their motive to say February 1? Their motive was that the new regulations went into effect on February 8. And you had to be in compliance with them before February 8? Right. That's right. That was the motive as we understand it. And sort of as a companion piece to that, when analyzing the document you're looking at the client's intent, the lawyer's intent may be totally innocent. You're looking at the client's intent. Whether or not the fraud is actually successful, completed, is not relevant to this exception. And documents that on their face are completely innocuous can be intended, and I believe in this case the district court found that they were, intended to further the fraud. But that intent really can only be deduced, as I think the district court was correctly pointing out, from the larger context. And here the scheme, the five-year long or six-year long scheme to defraud federal agencies by concealing, misrepresenting the ownership, the operation, and control of Legion was what these documents went to. Now, turning to the merits of the government's appeal. Now, you have a second prong, which you've just slightly alluded to. But Mr. Weinberg has argued that there is a secondary obligation on the part of the district judge to go back and winnow out the innocuous documents and turn over only those that are more like smoking guns. Would you address that? You have just in part by saying the district court found you should turn over everything so that the context of the fraud can be determined. But what's the law on this topic? If I said that, Your Honor, I misspoke. It's not to determine the context of the fraud. It's that even innocuous documents in context are part of the client's intent or communications intended by the client to further the fraud or conceal the prior fraud. To the extent that the documents are totally unrelated, are not intended to facilitate or conceal the fraud, yes, I agree, those should be winnowed out. By whom? Under Judge Saylor's order, it all gets turned over to you and you would do the winnowing out. Your opponent's argument is it should be done by Judge Saylor. I think that the initial subpoenas were limited. They were limited to documents that were relevant to the fraud. They were limited essentially to three categories of documents, their ownership of Legion, its eligibility to qualify as a services disabled veteran-owned business, the negotiations related to transfers of stock, and the bid protest. So, I mean, already you're looking at a limited universe of documents that were even covered by the subpoenas. What winnowing are you going to do? I'm not saying that. I'm saying that winnowing was already done in terms of the request for the subpoenas. Only those documents were being covered by the subpoenas. Then Judge Saylor did further winnowing when in response to the motion for reconsideration. Whole categories of documents, as requested by the defendant, were struck out. So, in other words, there's been a winnowing done first by the government in the documents requested, but second by Judge Saylor by eliminating the categories or certain categories that the defendant and Legion asked him to do so. But the district court also winnowed out one category, the subject of the government's appeal that we feel that it did inappropriately, that it was legal error for it to do so. And that is the so-called Category 3 documents. Those are the communications between Gorski and his personal attorney relating to this 2010 restructuring. We're saying that the district court committed an abuse of discretion because this winnowing was a legal error. What the district court found, and these reports were limited to what the district court found on the public record, but his statement on the public record is this. The basic intent of these communications is arguably the same as the communications with Mintz-Levin. In other words, to facilitate or conceal the fraud. But, the court found, this attorney apparently had no role in the submission to the SBA, the SBA being the party that was arbitrating the bid protest relating to whether or not it truly qualified. And therefore, the court will not make necessary funding. This reasoning is clearly equally erroneous. Whether or not this attorney actually participated or submitted any documents to the SBA doesn't matter for purposes of the crime-fraud exception. What matters is the defendant's intent. Does it depend in part upon what Judge Saylor was thinking the fraud was that got him into the analysis? In other words, if he was giving way to the dating of the documents and particularly to the affidavit, that he thought that was what tipped him over into finding there was sufficient showing of fraud here, wouldn't that then, since Mintz-Levin did that, wouldn't that provide, at least within an abuse of discretion standard, a basis for distinguishing between the two lawyers? Well, I suppose it might, but that's clearly not what the district court was doing here. In other words, when you look at the first prong of the fraud-fraud exception, what the question is, was the client engaged in or planning criminal or fraudulent activity? And here, what the district court found was the criminal fraudulent activity was that alleged in the indictment. In other words, the scheme beginning in 2005 through a series of bids, reorganizations, various representations to the government to conceal and fraudulently represent the true ownership, direction, control of Legion. So in other words, although it's true that the district court did make several mentions of this particular chain, the backdating of documents, that was only a small part of the larger fraud that the court was considering. It would make no sense to simply ignore the rest of the fraud that extended back for quite some time and went beyond submitting documents to the SBA. But even if that, simply focusing on that particular fraud, the backdating documents, whether or not this particular attorney had a role in the submission to the documents, the SBA is legally irrelevant. What's relevant is, was the client's intent, was Mr. Gorski's intent here to facilitate or conceal his fraud? And the court found, on the record, yes. The basic intent of the communications is arguably the same as the communications with Mint 11. The word arguably is perhaps, I think was argued in the briefs, somewhat unclear. But in context, I think what it is is a rough approximation to the standard that the court was applying. In other words, there has to be a reasonable basis to believe. A reasonable basis is essentially, in other words, what the court meant by arguably. But if your argument is correct, if they had no role rationale, isn't a sufficient rationale, what's the remedy that the government seeks? Because it's perfectly conceivable that if the personal attorney had no role, that there may be documents in this category that really have nothing to do with being in furtherance of the fraud. Well, it's possible, but of course the difference. So what's the remedy? Are you asking us to order these documents to be turned over to you? Or are you asking us to vacate this order and ask the district court to give you such of these, of the documents that fall in these categories, in this particular category, as the court determines are in furtherance of the fraud, or arguably in furtherance of the fraud? Well, I suppose this court could do either one. But the district court, I believe, has already made that determination, already found that these documents were relevant, that they were finding, that they were privileged, but yet that the crime fraud exception, as applied to the documents in its initial decision, required that they be turned over. It's only in the decision for reconsidering where this language about ‑‑ So what remedy do you want? The remedy would be for the documents to be turned over, which is the remedy that the district court ordered. The first time around? Yes, as to the documents that it ordered turned over, yes, as to all the documents. Okay, so you want us to order the district court to say it's error on the reconsideration of Category 3 and the government must be given the documents as opposed to take another look at this question and either do a remedy such as Judge Salia had suggested or just rethink the whole thing. What do you want? The government would like the documents turned over. I think the court applied the incorrect legal standard. The only reason it gave for requiring that the documents not ‑‑ But when a court applies an incorrect legal standard, a remedy is usually to vacate that order and remand and direct the district court to apply the correct legal standard. The district judge presumably has seen these documents. We haven't. So why shouldn't that be the remedy that you're entitled to if you assume your basic argument is correct? That the case would be ‑‑ That we remand to the district court and ask him to apply, you applied the wrong standard to the Category 3 documents, apply the correct standard and order production of so much of that category, so many of those documents as are indicated. And directing to not give any weight to the incorrect legal standard, that is whether or not this attorney played any role in submitting documents to the SBA. I think that would be an appropriate remedy as well. However, I argue that the district court already made the required finding when it found the basic intent of the documents. It was the same, arguably the same as the communications with Ms. Levin. It's already found that the crime fraud exception applied, which would, and it was only, did not require them to be turned over because of its misperception that the role in submission to the SBA made a difference. Okay. We've taken up a lot of your time. Is there something else you'd like to say to us? No, Your Honor. Unless the court has further questions, which I'd be happy to answer, we would rest on our feet. Okay. Thank you. I would ask the court for a minute to reply. Yes, you may have it. I failed to reserve it. Thank you. The document subpoena that the prosecutor relies on is a relevance test, documents relating to. And we suggest that the remand to Judge Sala expressly discredit any reliance on subject matter, or waver any reliance on relevance or proximity to the client intent, that there are categories of mince documents the client couldn't possibly intend or want to further the alleged fraud or ongoing scheme. Could you give in theory, without reference to these documents, what type of document that was necessary in the eyes of the law firm to form the corporation, which the allegation is the corporate veiled and served as the camouflage behind which he conducted activity? What type of document would not be to facilitate his? Well, the client would not want the law firm to engage in independent legal research as to what the proper criteria were for the regulation. He would not want the intralaw firm email. But I thought he wanted the corporation set up in a way that would, to all outward appearances, comply with the corporation. And that could well be a document that the client intended. But the mince documents are relevant, perhaps, to the client intent. But they're not intended by the client. The client wouldn't intend the national disinterested law firm hired to bring him in conformity with the regulation to do independent legal research, independent fact research. Mr. Weinberg, thank you. Thank you, Your Honors. A couple of points. One, the government has argued that this fraud has gone back to 2005 and that therefore all of these documents could be to conceal the fraud from 2005 to 2010. District Court Judge Taylor never made that finding. He made the finding that the documents were intended to perpetuate a future fraud. Not to conceal a prior fraud. So anything that relates to prior wrongdoing, assuming there is stuff in there about prior wrongdoing, would be subject to the attorney-client privilege. The second point is I think that the court needs to send this back to Judge Saylor with the proper standing, both the Category 3 documents, which, by the way, Your Honors, do have. They are in the sealed appendix and they are documents 848 to 982. It is clear that Judge Saylor focused on the regulation change and the submission of the affidavits. He refers to that over and over again. That's why he distinguishes the Category 3 documents, because they have nothing to do with either of those two events. So he was focused on was there backdating and was there a false affidavit. Therefore, Your Honors, I submit that the crime fraud exception is limited to that crime or fraud. The crime or fraud that Judge Saylor was focusing on. Anything after that and anything before that should be out. No, I don't think Your Honors can order the district court judge not to give them to us or to maintain the privilege. I think Your Honors need to send them back and say here is the standard. Go through them. If not document by document, category by category, date categories, for example, you can do. You don't have to make a finding with respect to every single document. All right. Thank you, Your Honors. The court will take a brief recess before the next argument. All rise, please.